# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.

AMERICAN EXPRESS MARKETING
& DEVELOPMENT CORP.,
    a Delaware corporation, and
AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC.,
    a New York corporation

        Plaintiffs,

v.

GARY NOLAND,
    an individual

        Defendant.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

American Express Marketing & Development Corp., a Delaware corporation, and American Express Travel Related Services Company, Inc., a New York corporation, for their complaint against Mr. Gary Noland ("Defendant" or "Noland"), allege as follows:

## JURISDICTION AND VENUE

1. Jurisdiction in this Court and in the subject matter of this action arises under the trademark laws of the United States, 15 U.S.C. §§ 1051, *et seq.*; 28 U.S.C. §§ 1331 and 1338; under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and under the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367.

2. This Court may exercise personal jurisdiction over Defendant based upon his domicile in Opa Locka, Florida, and his presence within this judicial district.

3. Venue in this Court in this action arises under 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

4. Plaintiff American Express Marketing & Development Corp. ("AmexMDC") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 200 Vesey Street, New York, NY 10285.

5. Plaintiff American Express Travel Related Services Company, Inc. ("AmexTRS") is a corporation organized and existing under the laws of the State of New York with its principal place of business at 200 Vesey Street, New York, NY 10285. AmexMDC and AmexTRS are referred to collectively hereinafter as "American Express".

6. Upon information and belief, Defendant Gary Noland is a Florida resident whose last known address is 3900 NW 161st Street, Opa Locka, FL 33054.

## BACKGROUND

*American Express's Events and Trademarks*

7. American Express, together with its related subsidiaries, provides customers with access to various products and services, including its principal products and services: charge and credit payment card products and travel-related services.

8. In 2010, American Express created a live-streaming concert event that permitted music fans to watch a live performance from a well-known musical artist and to view behind-the-scenes videos tied to that performance. Viewers from around the world were able to login and watch this performance on their computers, smart phones, and tablets. American Express described the initial event as "a collaboration between indie rock band Arcade Fire and [film] director Terry Gilliam" delivering an immersive performance that "married the worlds of music and film" . . . [and] "blurred the lines between the digital world and the real world." The initial

event was advertised and promoted as "*Unstaged: An Original Concert Series from American Express*". *See* Exhibit 1

9. As further explained on the American Express website (*see* www.amexunstaged.com), the original "experience kicked off before the live show even started. Fans were able to watch a series of short films that helped build excitement for the upcoming performance. [Filmmaker] Gilliam captured the band in backstage moments that were both serious and playful, giving fans a glimpse into the band's pre-show rituals. Fans were also able to tweet questions to the band and have them answered in additional pre-show content. And on August 5, 2010, fans from all over the world tuned in to catch the live performance held at Madison Square Garden in New York City. [The band] Arcade Fire rocked out an hour-and-a-half-long set that included old favorites and new songs from their 2010 album *The Suburbs*. Fans were able choose the songs for the encore performance by voting digitally. 'Keep The Car Running,' 'Wake Up,' and 'Sprawl II' closed out the night and gave fans an incredible finale. The collaboration between Arcade Fire's unique sound and Gilliam's creative vision resulted in a unique and innovative experience that fans will never forget."

10. Following the success of the first event, American Express worked with other artists to create concert-film collaborations from Coldplay, Mary J. Blige and Pharrell Williams, among others. *See* Exhibit 2. These events took place in such venues as Madison Square Garden in New York City; Plaza de Toros de Las Ventas, a working bullring in Madrid; Nokia Theater in Los Angeles; and Apollo Theater in Harlem and, as with the first event, were live-streamed over the Internet and experienced by viewers throughout the world.

11. Today, the American Express website describes the AMERICAN EXPRESS UNSTAGED Concert Series as follows: "More than a live-streaming concert series, American

- 3 -

Express UNSTAGED takes you on the journey of artists who are defining music culture, beat by beat. Be part of a story in progress, from their musical roots to their latest creative revelations. As told by some of today's most visionary filmmakers. Launched in 2010, American Express UNSTAGED created a whole new way for fans to connect with their favorite artists. The series partners influential filmmakers with some of the music industry's most talented and creative artists to develop extraordinary shows held at incredible venues. In addition to directing the live performances, the filmmakers go beyond the music to capture the artists behind the scenes, helping fans get an up close and personal look into the artists' lives offstage." *See* Exhibit 3.

12. American Express is scheduled to offer its next AMERICAN EXPRESS UNSTAGED Concert Series event on November 7, 2015. This event will feature Dead & Company performing live from Madison Square Garden.

13. In connection with its above-described concert series, AmexMDC has registered several United States trademarks, which it, in turn, has licensed to AmexTRS for use in conjunction with the above-described concert series events. Specifically, AmexMDC owns United States Trademark Registration No. 4,046,978 for the mark UNSTAGED AN ORIGINAL SERIES FROM AMERICAN EXPRESS for use in connection with "entertainment in the nature of live performances by musical artists to live-stream concerts over the Internet" (registered October 25, 2011); United States Trademark Registration No. 4,477,147 for the mark AMERICAN EXPRESS UNSTAGED for use in connection with "entertainment services in the nature of live performances by musical artists to live-stream concerts over the Internet performances" (registered February 4, 2014); and United States Trademark Registration No. 4,760,409 for the mark UNSTAGED for use in connection with "downloadable mobile applications which enable performances by musical artists to become live-stream concerts and to play music videos" and "entertainment services in

- 4 -

the nature of live performances by musical artists to live-stream concerts over the Internet performances" (registered June 23, 2015). Copies of the registration certificates for these trademarks are attached hereto as Exhibit 4.

14. American Express's AMERICAN EXPRESS UNSTAGED concerts have met with significant critical acclaim. For example, *Forbes* recently explained;

> To date, American Express has produced 16 Unstaged concerts made accessible worldwide, with acts ranging from Jay Z and Usher, to Tim McGraw and Vampire Weekend. Though each show receives substantial viewership, their live stream concert with Coldplay set a record, generating over 1.6 million YouTube viewers. Their advantage is engagement, as each Unstaged show implements an innovate approach to incorporating second-screen viewers into the concert experience.

*See* Exhibit 5.

### *Defendant's Allegations*

15. Upon information and belief, Defendant Noland is an Opa Locka, Florida resident whose sole source of income appears to come from walking the beaches of South Beach and composing songs for tourists. Upon further information and belief, Noland's *modus operandi* is to meet tourists, ask them for personal information about themselves (*e.g.*, their names, their friends'/spouses' names, reasons for traveling to Florida, significant events ongoing in their lives, etc.) and then to create a personalized song using that information which he then sings to the tourist(s).

16. Upon information and belief, on occasion, Noland records the song on his laptop and, when a tourist is willing to pay him, he will burn a CD with the song and give it to the tourist to take home.

17. Noland alleges that he uses the name "Unstaged" in connection with his beach-based singing activities, and in that regard that he owns the "unstaged.com" domain name as well as several other domain names incorporating the term "unstaged".

18. In February 2015, nearly four years after American Express obtained its registration for the trademark UNSTAGED AN ORIGINAL SERIES FROM AMERICAN EXPRESS, and nearly five years after American Express began using the name in connection with its live-streaming of concert performances, Noland contacted American Express regarding American Express's trademark application for the mark UNSTAGED alone. In his initial communication to American Express, Noland (or a representative on his behalf) requested that American Express withdraw the new application and purchase, from him, the rights to "Unstaged". The text of Noland's correspondence is attached hereto as Exhibit 6.

19. In that correspondence, Noland (or his representative) alleged, among other things, that (a) "Unstaged was created in 2003 by Gary Noland not by American Express"; and (b) "[t]his is a notice of dispute".

20. American Express, through its then trademark counsel, responded to Noland in an email dated February 27, 2015. This response indicated that American Express was reviewing Noland's claims and requested additional information regarding the statements made in his initial correspondence and his alleged use of "Unstaged". A copy of this email is attached hereto as Exhibit 7. No follow-up from Noland was received until June, 2015.

21. In June 2015, Noland reached out to American Express by telephone. On June 23, present trademark counsel for American Express returned Noland's call to discuss his allegations. During that conversation, Noland reasserted his claim that he was the owner of the name

"Unstaged" as a result of his use of the name and his ownership of the domain names "unstaged.com" and "unstagedconcertsereies.com."

22. During the June 23 call, Noland also alleged that in 2009 at The Ritz-Carlton, South Beach, a person who identified himself to Noland as a "VP at American Express" saw Noland and asked him to write a song, which Noland purportedly did. Accordingly to Noland, he then burned the song onto a CD that he in turn labeled with the name "Unstaged".

23. During the June 23 call Noland also indicated that "Amex should own 'Unstaged'" and all of the associated domain names. He also expressed his desire that American Express make him an offer, and indicated that a reasonable offer would be approximately $1 million.

24. The June 23 call concluded with American Express's counsel asking for Noland to provide documentation to support his claim to use of the name "Unstaged" since 2003, and his assertion that he had provided an "Unstaged"-labeled CD to a senior-level employee of American Express.

25. On July 10, 2015, Noland called counsel for American Express. During that call Noland alleged that while he had not hired any attorneys at that time, he had spoken to a number of "big law firms" and that they were "telling him he had a great case [against American Express]." During this conversation, Noland alleged how well known he is in the South Beach area, and how long he had been using the name "Unstaged". He also stated that he "knew how trademark infringement cases work" and "how companies like American Express have settlement accounts from which they can make substantial payouts" to make claims such as his "go away." The call ended with counsel for American Express reiterating to Noland that before American Express could properly evaluate his claim, Noland would need to provide the previously requested substantiation.

- 7 -

26. In late July 2015, Noland provided a collection of documents, which documents Noland alleged supported his claim to the name "Unstaged". Noland also provided a letter explaining his alleged rights in the name "Unstaged" and alleging that American Express had taken from him without permission or compensation. *See* Exhibit 8.

27. In the material forwarded in late July, Noland alleged that by 2013 he had discovered that American Express was using UNSTAGED and that he "was pretty patient in light of this figuring Amex would contact [him] with an offer to buy [his] name." He indicated that in 2014, he was contacted by the domain name company Domain Holdings, who allegedly informed him that the name "Unstaged" was worth $1 million. As a result, Noland was of the opinion that "surely [American Express] ha[s] lawyers smart enough to inform them that I could file legit lawsuits against everyone under the sun over this!" *See* Exhibit 8.

28. At the conclusion of the communication attached as Exhibit 8, Noland demanded for $1.35 million for "all of his unstaged domain assets and [a] sign off on any and all legal releases concerning the use of the name."

29. On September 11, 2015, Noland again asserted his rights to "Unstaged", explaining that he felt his request for $1.35 million was a "fair" request, and threatened that he knew several public relations firms that could "create issues" for American Express. Noland also reasserted his claim that there were several law firms interested in his case.

30. On September 18, 2015, Noland called counsel for American Express and reiterated that he had been using the "Unstaged" name for a long time in "interstate commerce" and thus could likely cancel American Express's recently-issued registration for the mark UNSTAGED. Noland also referred to his recently revised website, wherein he suggests that several of the musical artists formerly featured in American Express's UNSTAGED Concert Series "are using my name

because of the actions of [A]merican [E]xpress. I may be releasing more details very soon if they do not agree to resolve this matter." *See* Exhibit 9.

31. During that September 18 call, Noland again indicated that he had spoken with a law firm, which he identified as the "Rosen Law Firm", and that he was "losing patience."

32. On October 5, 2015, Mr. Noland directly emailed a senior-level American Express employee. A copy of this email is attached hereto as Exhibit 10. The subject of the email was "Unstaged.com" and the body of the email read, "I have been very patient. The media are knocking at my door. [Signed] Unstaged.com."

33. In response, counsel for Plaintiffs emailed Defendant on October 6 to inform him that he should not contact employees of American Express directly and instead any contact should be through American Express's counsel. Defendant responded to this email the same day asserting that he was

> [b]eing questioned by media about this now. Amex needs to understand that the actions [he] must take to protect [his] asset are time sensitive….[His] options after such an answer are many due [sic] to the amount of celebrities involved in this. [He] ha[s] not brought attorneys into this and feel[s] this is a fairly cheap out for Amex at this point.

A copy of this email correspondence is attached hereto as Exhibit 11.

### *American Express's Use of UNSTAGED Does Not Infringe or Compete Unfairly With Any Legitimate Rights of Noland*

34. Any alleged use that Noland has made of the name "Unstaged", including, without limitation, his alleged use of the domain name "unstaged.com", has not given rise to trademark rights in that term.

35. To the extent Noland does have rights in the term "Unstaged", American Express's use of UNSTAGED in connection with its live-stream music experience does not infringe any such rights under federal law, state law, common law, or otherwise.

36. American Express's use of UNSTAGED is in connection with goods and services that are very different from the goods and services Noland claims to offer. American Express's services consist of a live-streamed concert series that enables viewers worldwide to connect with musical artists who are well-known or famous throughout the world by watching concerts and behind the scenes videos on their computer or mobile device. The services Noland purports to offer are happenstance, one-on-one, personalized song performances by a local area resident who is unknown away from his "home" beach. These services are offered to beach-goers primarily (if not always) at a single location, namely South Beach. Thus, even if Noland's use were sufficient to be considered trademark use, American Express's channels of trade and consumers are sufficiently different from Noland's such that confusion is not likely.

37. Notwithstanding Noland's accusations, there is no evidence to support Noland's claim that American Express's adoption of names that feature the term UNSTAGED was somehow derived from or based on Noland's alleged prior use.

*An Actual Case or Controversy Exists*

38. An actual case and controversy exists between American Express and Noland arising from Noland's demand for payment from American Express and from Noland's ongoing threats to counsel for American Express that litigation and/or an initiative to generate negative publicity regarding American Express and its adoption and use of UNSTAGED will result if American Express does not pay Noland $1.35 million.

39. Noland has repeatedly indicated that he could "file lawsuits" against American Express; he has proffered a "notice of dispute" to American Express; he has threatened to cancel AmexMDC's UNSTAGED trademark registration; he has indicated that he is "losing patience"; and as recently as October 6, he has indicated that the actions he must take are "time sensitive."

40. Noland has also suggested to counsel for American Express on several occasions that he could initiate a media campaign that would have negative public relations consequences for American Express. In this regard Noland has already posted online commentary about his alleged issues with American Express thereby attempting to generate negative publicity for American Express. He has also written directly to a senior-level American Express employee threatening to contact the media with respect to his claim.

41. Most recently, on October 23, 2015, in response to a communication to Mr. Noland from American Express's counsel, Noland indicated that he had "a substantial legal team at the ready" and "[t]he trademark [American Express] filed will be easily cancelled." Mr. Noland also adds that he and his "legal team" "will begin on close of business day [sic] October 29, 2015 to contact all artists and directors involved in the use of my name, YouTube and Vimeo as well of course." *See* Exhibit 12. Further, on October 26, Mr. Noland contacted counsel for American Express and stated, in relation to his threat of legal proceedings, "I am going to do this" if American Express does not pay me $1 million.

42. While Noland has been making the above-referenced threats to American Express personnel and to its counsel, American Express has been in the process of trying to develop additional live-stream concert events to be offered under American Express's federally registered UNSTAGED trademarks. American Express is planning for these events to occur within the next

several months, and Noland's on-going threats of litigation and generating negative publicity are making it difficult for American Express to ensure that its UNSTAGED events go on as planned.

43. Based upon the threats and demands made by Noland an actual case or controversy exists between the American Express and Noland, and American Express possesses a reasonable and immediate apprehension of a trademark infringement suit and trademark registration cancellation action. Noland's accusations against American Express, his belief that he is entitled to payment from American Express, and his continuous demands for compensation and/or negative publicity threaten potentially serious consequences to the business operations of American Express.

## FIRST CAUSE OF ACTION

44. American Express re-alleges and incorporates by reference each of the averments in paragraphs 1 – 43 hereof.

45. In this cause of action, American Express seeks a declaration under 28 U.S.C. § 2201 and § 2202 that its use of UNSTAGED in connection with the services set forth in United States Trademark Registration Nos. 4,046,978, 4,477,147, or 4,760,409, and, in particular, in connection with its live-stream concert events and related mobile applications, (i) does not infringe or otherwise violate any alleged trademark or other right(s) that Defendant Noland may have under the Trademark Laws of the United States, including 15 U.S.C. §§ 1117 or 1125; (ii) that the accused use of UNSTAGED by American Express does not infringe any of Defendant's alleged rights in the term "Unstaged" or constitute a false or misleading designation of origin, description of fact or representation of fact that is likely to cause confusion, to cause mistake, or to deceive as to an affiliation, connection or association between American Express and Noland; and (iii) that Noland is not entitled to any damages or other compensation or relief under Federal law as a result

of American Express's use and registration of the marks shown in United States Trademark Registration Nos. 4,046,978, 4,477,147, and 4,760,409.

## SECOND CAUSE OF ACTION

46. Plaintiffs re-allege and incorporates by reference each of the averments in paragraphs 1 – 45 hereof.

47. For its second cause of action, Plaintiffs seek a declaration under 28 U.S.C. § 2201 and § 2202 that its use of UNSTAGED in connection with the services set forth in United States Trademark Registration Nos. 4,046,978, 4,477,147, or 4,760,409, and, in particular, in connection with its live-stream concert events and related mobile applications, (i) does not infringe or otherwise violate any alleged right(s) that Defendant Noland may have under the trademark, anti-dilution, or other laws of Florida or any other state, (ii) that such use does not constitute unfair competition with Noland under any common law or statutory right of Florida or any other state, (iii) that the accused use of UNSTAGED by American Express does not infringe Defendant Noland's common law, state, or any other alleged rights in the term "Unstaged" or constitute a false or misleading designation of origin, description of fact or representation of fact that is likely to cause confusion, to cause mistake, or to deceive as to an affiliation, connection or association between American Express and Noland; and (iv) that Noland is not entitled to any damages or other compensation or relief under state or common law as a result of American Express's use and registration of the marks shown in United States Trademark Registration Nos. 4,046,978, 4,477,147, and 4,760,409.

## **PRAYER FOR RELIEF**

WHEREFORE, American Express requests from this Court the following relief:

a. A declaration that American Express's use of UNSTAGED AN ORIGINAL SERIES FROM AMERICAN EXPRESS, AMERICAN EXPRESS UNSTAGED, and UNSTAGED in connection with its live-stream concert events, its collaboration with musical artists, and its related mobile applications, does not constitute an infringement or violation of any rights of, or amount to any form of unfair completion with, Defendant Noland;

b. A declaration that American Express has the right to own and use the trademarks UNSTAGED AN ORIGINAL SERIES FROM AMERICAN EXPRESS, AMERICAN EXPRESS UNSTAGED, and UNSTAGED;

c. A declaration that Defendant Noland is not entitled to any damages or any other compensation or monetary award or payment, or any other form of relief from American Express;

d. An injunction prohibiting: (i) further acts of harassment and threats by Noland (and/or any individual or entity working in conjunction with Noland or on his behalf) against American Express and its employees; and (ii) any acts of harassment and/or threats by Noland (and/or any individual or entity working in conjunction with Noland or on his behalf) against any artist, venue, website, or any other third party associated (either currently or formerly) with the American Express live-stream concert events;

e. An injunction prohibiting further interference with American Express's business by Noland (and any individual or entity working in conjunction with Noland or on his behalf) including, by way of example and not limitation, by including references to American Express and/or its products, services, and/or activities, on any website or social media posting, or by

making any statements mentioning or otherwise referring to American Express, its interests, or its employees;

  f. An award to American Express of its costs and reasonable attorneys' fees incurred in this action; and

  g. Such other and further relief as this Court may deem just and proper.

Dated: October 29, 2015      Respectfully submitted,

                      /s/Luca R. Bronzi
                      Luca R. Bronzi
                      Florida Bar No. 015628
                      lbronzi@bronzipa.com
                      Luca R. Bronzi, PA
                      350 Lincoln Road, 2nd Floor
                      Miami Beach, FL 33139
                      Telephone: (786) 247-5792

*Of counsel*:

Timothy J. Kelly
tkelly@fchs.com
Tara A. Byrne
tbyrne@fchs.com
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 218-2100
Facsimile: (212) 218-2200

                    *Attorneys for Plaintiffs American Express*
                    *Marketing & Development Corp. and American*
                    *Express Travel Related Services Company, Inc.*